UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.: _____

ROBERTINO JONES, an individual,
and STEPHANIE JEUNE, an individual,

    Plaintiff(s),

vs.

UNITY BEHAVIORAL HEALTH, LLC,
A Florida Limited Liability Corporation,

    Defendant(s).
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiffs, ROBERTINO JONES, [Hereinafter, "JONES"], STEPHANIE JEUNE, and [Hereinafter, "JEUNE"], by and through the undersigned attorney, alleges the following against Defendant, UNITY BEHAVIORAL HEALTH, LLC, a Florida limited liability corporation, and state, to wit:

**INTRODUCTION**

2. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et seq.). The jurisdiction of this Court is invoked to secure protection of and redress the deprivation of rights guaranteed by federal law involving discrimination in employment.

**JURISDICTION AND VENUE**

3. This is an action which arises under Title VII of the Civil Rights Act of 1967 as amended, (42 U.S.C. 2000e seq.).

4. Jurisdiction is founded on 42 USC 2000e-5(f)(3) and USC 1331 (Federal Question).

5. Venue is proper in the Southern District of Florida pursuant to 42 USC 2000e-5(f)(3) Title VII "Venue"; and 28 USC 1391(b) and ( c) (Venue generally).

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

6. Plaintiffs, ROBERTINO JONES, and STEPHANIE JEUNE, timely filed with the Equal Employment Opportunity Commission, ("EEOC"), a charge of discrimination against Defendant, UNITY BEHAVIORAL HEALTH, LLC. Plaintiffs, JONES and JEUNE, each received a notice of the right to sue from EEOC within ninety (90) days of the filing of this Complaint. A copy of each Plaintiff's Notice of Right to Sue Letter issued by the EEOC is attached as Exhibits "1" and "2", respectively.

## PARTIES

7. At all times material to this action, Plaintiffs, JONES, and JEUNE, is/are/were resident(s) of Palm Beach County, Florida, over the age of 18, and otherwise sui juris.

8. At all relevant times, Defendant, UNITY BEHAVIORAL HEALTH, LLC, is a Florida limited liability corporation and authorized to do business in Florida, and conducts business from its offices that are located in and throughout Palm Beach County, Florida.

9. At all relevant times, Defendant, UNITY BEHAVIORAL HEALTH, LLC, [Hereinafter, "BEHAVIORAL HEALTH"], was/is engaged in an industry affecting interstate and intra-state commerce.

10. At all relevant times, Defendant, BEHAVIORAL HEALTH, employed Plaintiffs, JONES and JEUNE, within the meaning of 42 U.S.C. 2000e-(b).

11. Defendant engaged in policies and practices which are/were willfully, intentionally and

unlawfully discriminating against Plaintiffs on the basis of their race (Black) and their national origin, ancestry and/or descent (Haitian-American).

**CLAIMS OF PLAINTIFF ROBERTINO JONES**
**COUNTS I & II**

**COUNT I**
**ROBERTINO JONES' CLAIM BASED ON**
**RACE DISCRIMINATION UNDER TITLE VII**
**AGAINST BEHAVIORAL HEALTH**

12  Plaintiff, ROBERTINO JONES, sues Defendant, BEHAVIORAL HEALTH, and re-alleges paragraphs 1 through 11, as if fully set forth herein, and are incorporated by this reference.

13. Plaintiff, JONES, is a Black male protected under Title VII (42USC §2000(e)(b)).

14. Defendant, BEHAVIOR HEALTH, is an employer within the meaning of Title VII. Moreover, at all time material hereto, the Plaintiff, JONES, in 2018, is/was employed by Defendant, BEHAVIOR HEALTH, as Director of Client Services at the Defendant's West Palm Beach location, situated in Palm Beach County, Florida. Plaintiff was one of the two Blacks acting in the position of managers at BEHAVIORAL HEALTH.

15. Plaintiff JONES's duties required him to supervise and work with "Client Service Specialists", which was Stephanie Jeune's title and position with BEHAVIORAL HEALTH. Moreover, Plaintiff JONES's work duties and responsibilities further involved routine and regular inter-actions with patients and other co-workers.

16. Stephanie Jeune, (co-Plaintiff), was hired as a "Client Service Specialist" with BEHAVIORAL HEALTH. Moreover, Ms. Jeune was given the job responsibility/duty of "Case Manager". She was given that job duty because of her prior experience.

BEHAVIORAL HEALTH's management was aware of Ms. Jeune's prior experience and promised to pay/compensate her in accordance with her prior experience. Ms. Jeune on several occasions complained to Defendant's Human Resources/Personnel Office ("HR") about how she was not being paid or compensated, as promised, based on her prior experience, and some of her complaints occurred at times in Plaintiff JONES's presence for him to observe and witness. As Ms. Jeune's supervisor, she would ask Plaintiff JONES to advocate for her pay increase that had been promised to her by BEHAVIORAL HEALTH. Plaintiff JONES advocated to best of his ability on Ms. Jeune's behalf, going up the Defendant's chain of command, (Plaintiff JONES's superiors), to see if she could receive the pay increased that was promised to her.

17. Plaintiff JONES was terminated in February 2018 because he was an advocate for Ms. Jeune regarding the pay raise due her. Prior to Plaintiff JONES's termination, he was not given any prior written or verbal reprimands by any of Plaintiff's superior(s). No one at BEHAVIORAL HEALTH could explain to Plaintiff JONES why he was terminated because Plaintiff JONES did not do anything wrong. The Defendant alleged that Plaintiff JONES was terminated for having an abrasive attitude/conduct toward fellow employees and directors. Defendant claimed that Plaintiff was aware that unacceptable conduct could result in disciplinary action, up to, and including, termination/discharge. Yet, Plaintiff JONES never received either written or oral counseling from the Defendant or its authorized agents for any work-related performances and/or unprofessional behavior.

18. Plaintiff JONES's termination letter from Defendant did not contain any citation or reference to a specific code of conduct or policy that Plaintiff was alleged to having violated. Additionally, Plaintiff was offered a severance package after his termination by

Defendant, which offers by Defendant seemed illogical or inconsistent if the person was terminated based on a violation of the Defendant's code of conduct.

19. Plaintiff JONES had repeatedly asked Mr. Joseph Monastra, who was one of the individuals higher than Plaintiff, if he (Mr. Monastra) could resolve the issue of Ms. Jeune's pay increase. Additionally, Cara Payson, a Caucasian female, who was one of JONES's subordinates, got a pay increase from BEHAVIORAL HEALTH while Plaintiff JONES was advocating for Ms. Jeune to get the salary increase that she had been promised. Upon learning of Ms. Payson's pay increase, two other members of management donated each $5,000.00, to help increase Plaintiff JONES's salary because they felt that he (JONES) was being discriminated against as evidenced in a denial of a pay increase to JONES himself. Plaintiff JONES was of the opinion that Ms. Jeune was one of the best case managers at BEHAVIORAL HEALTH even though she was not titled as a case manager.

20. Other individuals, such as the Clinical Director Terry (a Caucasian), used disparaging, negative language against Black co-workers. For example, Terry would respond to the questions of Black co-workers and subordinates by uttering "Otay", a reference to the word often uttered by the character "Buckwheat", who was only Black character featured in the old movie and television series *Our Gang (The Little Rascals)*, and whose "garbled English (was) punctuated by his signature exclamation, 'Otay'". [Ken Padgett, *Blackface!,* http://www.black-face.com/Billie-Buckwheat-Thomas.htm]. Several complaints were lodged by Black employees who felt offended by the Clinical Director's use of "Otay", but, despite the offensive conduct, nothing was done to her by BEHAVIORAL HEALTH for several months. Finally, BEHAVIORAL HEALTH only

Page 5 of 20

demoted Terry from the position of "Clinical Director" to a regular therapist position. BEHAVIORAL HEALTH did not even fire her, or even threatened to fire her.

21. Plaintiff JONES was terminated by the Defendant literally within a period of Fifteen (15) minutes a part of Ms. Jeune's termination, and JONES's termination was without any written or oral explanation as to the grounds or reasons for it.

22. Plaintiff, JONES, complained to BEHAVIORAL HEALTH's upper management about the discrimination against him personally and other Black co-workers, but nothing was done.

23. Defendant, BEHAVIORAL HEALTH, intentionally discriminated against Plaintiff, JONES, because of his race ("Black"), in violation of Title VII, by treating Plaintiff differently than other similarly situated employees who were not members of the Plaintiff's protected class: "Blacks."

## DAMAGES

24. As a direct and proximate result of the Defendant's conduct, Plaintiff, ROBERTINO JONES, suffered the following injuries and damages

    a. Plaintiff was terminated from employment with Defendant. Although Plaintiff has diligently sought other employment, he has not been able to find a job for a number of months. In addition, Plaintiff has incurred expenses in seeking other employment.

    b. Plaintiff suffered mental anguish and emotional distress.

**WHEREFORE,** Plaintiff, ROBERTINO JONES, prays that this Court:

    a. Advance this case on the docket;

  b. Assign this case for hearing at the earliest practicable date and cause this case to be in every way expedited pursuant to 42 U.S.C. § 2000e-5(f)(5);

  c. Issue a declaratory judgment that Defendant's practices toward Plaintiff violated his rights under Title VII;

  d. Enjoin Defendant, its administrators, directors and supervisors from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their race and national origin, which right are secured by Title VII;

  e. Order Defendant to remedy the race and national origin discrimination against Plaintiff by:

    1. Paying appropriate back pay;

    2. Paying prejudgment interest; and

    3. Providing any other relief that this Court deems appropriate;

  f. Enter a judgment against Defendant for compensatory damages;

  g. Enter a judgment against Defendant for punitive damages; and

  h. Enter a judgment against Defendant for costs and a reasonable award of attorneys' fees pursuant to Title VII.

## COUNT II
## ROBERTINO JONES' CLAIM FOR
## RETALIATION AGAINST BEHAVIOR HEALTH

25. Plaintiff, ROBERTINO JONES, sues Defendant, BEHAVIOR HEALTH, and re-alleges paragraphs 1 through 11, as if fully set forth herein, and are incorporated by this reference.

26. Plaintiff is a Black male employee protected under Title VII (42USC § 2000e(b)).

27. Defendant, BEHAVIORAL HEALTH, is an employer within the meaning of the Title VII.

28. Plaintiff, JONES, was employed by Defendant, BEHAVIORAL HEALTH, as the Director of Client Services.

29. Plaintiff, JONES, filed a charge of discrimination based on Title VII violations for Race and Retaliation against Defendant BEHAVIORAL HEALTH, which prompted the EEOC to launch an investigation against Defendant for discriminatory employment practices.

30. Plaintiff advocated a pay increase for one of his subordinate, Ms. Stephanie Jeune. Defendant's upper management did not like or appreciate that Plaintiff JONES was requesting a pay increase for a Black employee and thereby terminated Plaintiff's employment with BEHAVIORAL HEALTH within fifteen (15) minutes after the other Black employee (Ms. Jeune) was terminated.

31. Following the Plaintiff JONES's insisting on the co-worker getting the pay increases that was promised to her, the Defendant, BEHAVIORAL HEALTH, retaliated against Plaintiff JONES by firing him within five minutes after the termination of the employee (Ms. Jeune), for whom Plaintiff had been advocating.

32. As a direct and proximate result of the Defendant's conduct Plaintiff, ROBERTINO JONES, suffered the following injuries and damages:

    a. Plaintiff's employment was terminated by Defendant.

    b. In addition, Plaintiff has incurred expenses in seeking other employment.

    c. Plaintiff suffered mental anguish and emotional distress.

**WHEREFORE,** Plaintiff, ROBERTINO JONES, prays that this Court:

    a. Advance this case on the docket;

  b.  Assign this case for hearing at the earliest practicable date and cause this case to be in every way expedited pursuant to 42 U.S.C. § 2000e-5(f)(5);

  c.  Issue a declaratory judgment that Defendant's practices toward Plaintiff violated his rights under Title VII;

  d.  Enjoin Defendant, its administrators, directors and supervisors from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their national origin, which rights are secured by Title VII.

  e.  Order Defendant to remedy the National Origin discrimination against Plaintiff by:

    1.  Paying appropriate back pay;

    2.  Paying prejudgment interest; and

    3.  Providing any other relief that this Court deems appropriate.

  f.  Enter a judgment against Defendant for compensatory damages;

  g.  Enter a judgment against Defendant for punitive damages; and

  h.  Enter a judgment against Defendant for costs and a reasonable award of attorneys' fees pursuant to Title VII.

---

**CLAIMS OF PLAINTIFF STEPHANIE JEUNE**
**COUNTS III, IV & V**

---

**COUNT III**
**STEPHANIE JEUNE'S CLAIM BASED ON**
**RACE DISCRIMINATION UNDER TITLE VII**
**AGAINST BEHAVIORAL HEALTH**

35. Plaintiff, STEPHANIE JEUNE, sues Defendant, BEHAVIORAL HEALTH, and re-alleges paragraphs 1 through 11, as if fully set forth herein and are incorporated by this reference.

36. Plaintiff, JEUNE, is a Black female of Haitian-African nationality, orgin, descent and ancestry, protected under Title VII (42USC §2000(e)(b)).

37. Defendant, BEHAVIORAL HEALTH, is an employer within the meaning of Title VII. Moreover, at all time material hereto, the Plaintiff, JEUNE, is/was employed by Defendant, BEHAVIORAL HEALTH, as a Behavioral Health Technician, ("BHT"), but was performing the job function of Client Care Specialist also known as Case Manager at the Defendant's Palm Beach, Florida location.

38. Plaintiff JEUNE's employment required her to work with other Behavioral Health Technicians, patients, and patients' families. Plaintiff's work duties and responsibilities further involved routine and regular interaction with patients and other co-workers and patients' families.

38. While working for the Defendant, Plaintiff JEUNE's name was listed on the telephone directory as Client Care Specialist (Case Manager). She did intakes with clients as Client Care Specialist, which job Behavioral Health Technicians did not do.

39. While working for the Defendant, Plaintiff JEUNE had a company mobile phone for upper management and staff members to contact her. Other Behavioral Health Technicians did not have such items. Furthermore, Plaintiff JEUNE participated in meetings in her role or function as a Client Care Specialist (Case Manager), at which meetings only upper managements were in attendance. Other Behavioral Health Technicians would not attend such meetings.

40. While working for the Defendant, Plaintiff JEUNE signed off on patients' charts as Client Care Specialist (Case Manager) and she would do audits of their charts during her employment period. Furthermore, Plaintiff JEUNE was responsible for training Behavioral Health Technicians as to intake protocols.

41. During her employment with the Defendant, Plaintiff JEUNE used a rental vehicle to travel between different locations that Defendant owned to complete the duties of a Client Care Specialist (Case Manager), with the authorization and consent of the Defendant. Plaintiff JEUNE was never counseled for doing a job for which she had not been hired. In fact, Plaintiff JEUNE was promised a pay increase because of the good job that she did for the Defendant.

41. Plaintiff JEUNE's immediate supervisor, ROBERTINO JONES, on at least three (3) occasions in her presence asked upper management about the status of her (JEUNE's) pay increase because of the extended case load that she had.

42. Also, on several occasions, Plaintiff JEUNE complained to her supervisors, including Mr. Jones and others, about Clinical Director Terry's use of "Otay!", whenever Terry was responding to a question by Plaintiff. JEUNE also witnessed the Clinical Director utter "Otay!", in her presence while the Clinical Director was addressing other Black employees. Plaintiff JEUNE did not ever witness the Clinical Director utter "Otay!", when she would speak to Caucasian or Hispanic employees. To Plaintiff JEUNE, "Otay!" is offensive and derogatory, and Defendant BEHAVIORAL HEALTH did nothing to stop such racial hate.

43. Plaintiff JEUNE was never counseled about any work performance and conduct/behavioral issues by the Defendant. Plaintiff JEUNE remains in shock that she was fired, and she believes that the only reason that she can rationally believe as the cause or basis for her termination by Defendant was that she is Black. As proof, JEUNE's supervisor, Mr. Jones, who is also Black, was terminated fifteen (15) minutes apart from each other. As one can see, she was discriminated and treated differently than other similarly situated co-workers.

44. Defendant, BEHAVIORAL HEALTH, intentionally discriminated against Plaintiff, JEUNE, because of her race, " Black", in violation of Title VII, by engaging in the following discriminatory acts:

Subjecting Plaintiff to different (and less favorable) treatment and conditions of employment when compared to the treatment and conditions of employment affecting non-Black and non-Haitian co-workers, in violation of Title VII.

## DAMAGES

45. As a direct and proximate result of the Defendant's conduct, Plaintiff, STEPHANIE JEUNE, suffered the following injuries and damages:

   a. Plaintiff was terminated from employment with Defendant. Although Plaintiff has diligently sought other employment, she has been able to find a job paying less than what Plaintiff was making at BEHAVIORAL HEALTH. In addition, Plaintiff has incurred expenses in seeking other employment.

   b. Plaintiff suffered mental anguish and emotional distress.

**WHEREFORE,** Plaintiff, STEPHANIE JEUNE prays that this Court:

   a. Advance this case on the docket;

   b. Assign this case for hearing at the earliest practicable date and cause this case to be in every way expedited pursuant to 42 U.S.C. § 2000e-5(f)(5);

   c. Issue a declaratory judgment that Defendant's practices toward Plaintiff violated her rights under Title VII;

   d. Enjoin Defendant, its administrators, directors and supervisors from continuing or maintaining the policy, practice, or custom of denying,

abridging, withholding, or conditioning the rights of employees on the basis of their race and national origin, which rights are secured by Title VII.

e. Order Defendant to remedy the race and national origin discrimination against Plaintiff by:

1. Paying appropriate back pay;

2. Paying prejudgment interest; and

3. Providing any other relief that this Court deems appropriate.

f. Enter a judgment against Defendant for compensatory damages;

g. Enter a judgment against Defendant for punitive damages; and

h. Enter a judgment against Defendant for costs and a reasonable award of attorneys' fees pursuant to Title VII.

## COUNT IV
## STEPHANIE JEUNE'S CLAIM BASED ON
## NATIONAL ORIGIN DISCRIMINATION UNDER TITLE IV

46. Plaintiff, STEPHANIE JEUNE, sues Defendant, BEHAVIORAL HEALTH, and re-alleges paragraphs 1 through 11, as if fully set forth herein and are incorporated by this reference.

47 Plaintiff, JEUNE, is a Black female of Haitian-African descent and ancestry, protected under Title VII (42USC §2000(e)(b)).

48. Defendant, BEHAVIORAL HEALTH, is an employer within the meaning of Title VII. Moreover, at all times material hereto, Plaintiff, JEUNE, is/was employed by Defendant,

BEHAVIORAL HEALTH, as a Behavioral Tech ("BT"), but was performing the job function of Case Manager at the Defendant's Palm Beach, Florida location.

49. Plaintiff's employment required her to work with other Behavioral Technicians, patients, and patients' families. Plaintiff JEUNE's work duties and responsibilities further involved routine and regular interaction with patients and other co-workers and patient family.

50. While working for the Defendant, Plaintiff's name was listed on the Defendant's telephone directory as a Client Care Specialist (Case Manager). Plaintiff did intakes with patients as a Client Care Specialist, but Behavioral Health Tech does not do client intakes.

51. While working for the Defendant, JEUNE had a company mobile phone for upper management and staff members to contact her. Other Behavioral Health Technicians did not have such items. Furthermore, JEUNE participated in meetings in her role or function as a Client Care Specialist (Case Manager), at which meetings only upper managements were in attendance. Other Behavioral Health Technicians would not attend such meetings.

52. While working for the Defendant, JEUNE signed off on patients' charts as Client Care Specialist (Case Manager) and she would do audits of their charts during her employment period. Furthermore, JEUNE was responsible for training Behavioral Health Technicians as to intake protocols.

53. During her employment with the Defendant, Plaintiff JEUNE used a rental vehicle to travel between different locations that Defendant owned to complete the duties of a Client

Care Specialist (Case Manager), with the authorization and consent of the Defendant. JEUNE was never counseled for doing a job for which she had not been hired. In fact, JEUNE was promised a pay increase because of the good job that she did for the Defendant.

54. Plaintiff JEUNE's immediate supervisor, ROBERTINO JONES, on at least three (3) occasions in her presence asked Defendant's upper management about the status of her (JEUNE's) pay increase because of the extended case load that she had.

55. Also, on several occasions, Plaintiff JEUNE complained to her supervisors, including Mr. Jones and others, about Clinical Director Terry's use of "Otay!", whenever Terry was responding to a question by Plaintiff. JEUNE also witnessed the Clinical Director utter "Otay!", in her presence while the Clinical Director was addressing other Black employees. JEUNE did not ever witness the Clinical Director utter "Otay!", when she would speak to Caucasian or Hispanic employees. To JEUNE, "Otay!" is offensive and derogatory, and Defendant BEHAVIORAL HEALTH did nothing to stop such racial hate.

56. JEUNE was never counseled about any work performance and conduct/behavioral issues by the Defendant. JEUNE remains in shock that she was fired, and she believes that the only reason that she can rationally believe as the cause or basis for her termination by Defendant is that she is Black. As proof, JEUNE's supervisor, Mr. Jones, who is also Black, was terminated fifteen (15) minutes apart from each other. As one can see, she was discriminated and treated differently than other similarly situated co-workers.

57. Defendant, BEHAVIORAL HEALTH, intentionally discriminated against Plaintiff, JEUNE, because of her race ("Black"), in violation of Title VII, by engaging in the following discriminatory acts: subjecting Plaintiff to different (and less favorable) treatment and conditions of employment when compared to the treatment and conditions of employment affecting Non-Haitian and Non-Black co-workers, who were similarly situated but not members of Plaintiff's protected class ("Haitian" & "Black").

## DAMAGES

58. As a direct and proximate result of the Defendant's conduct, Plaintiff, STEPHANIE JEUNE, suffered the following injuries and damages:

    a. Plaintiff was terminated from employment with Defendant. Although Plaintiff has diligently sought other employment, she has been able to find a job paying less than what Plaintiff was making at BEHAVIORAL HEALTH. In addition, Plaintiff has incurred expenses in seeking other employment.

    b. Plaintiff suffered mental anguish and emotional distress.

**WHEREFORE,** Plaintiff, STEPHANIE JEUNE prays that this Court:

    a. Advance this case on the docket;

    b. Assign this case for hearing at the earliest practicable date and cause this case to be in every way expedited pursuant to 42 U.S.C. § 2000e-5(f)(5);

    c. Issue a declaratory judgment that Defendant's practices toward Plaintiff violated her rights under Title VII;

    d. Enjoin Defendant, its administrators, directors and supervisors from continuing or maintaining the policy, practice, or custom of denying,

        abridging, withholding, or conditioning the rights of employees on the basis of their race and national origin, which rights are secured by Title VII.

  e.  Order Defendant to remedy the race and national origin discrimination against Plaintiff by:

    1.  Paying appropriate back pay;

    2.  Paying prejudgment interest; and

    3.  Providing any other relief that this Court deems appropriate.

  f.  Enter a judgment against Defendant for compensatory damages;

  g.  Enter a judgment against Defendant for punitive damages; and

  h.  Enter a judgment against Defendant for costs and a reasonable award of attorneys' fees pursuant to Title VII.

### COUNT V
### STEPHANIE JEUNE'S CLAIM OF
### RETALIATION AGAINST BEHAVIORAL HEALTH

59. Plaintiff, STEPHANIE JEUNE, sues Defendant, BEHAVIORAL HEALTH, and re-alleges paragraphs 1 through 11, as if fully set forth herein, and are incorporated by this reference.

60. Plaintiff is a female employee who is Black and is of Haitian nationality, origin and/or descent, and is therefore protected under title VII (42USC § 2000e(b).

61. Defendant, BEHAVIORAL HEALTH, is an employer within the meaning of the Title VII.

62. Defendant, BEHAVIORAL HEALTH, is an employer within the meaning of Title VII. Moreover, at all time material hereto, the Plaintiff, JEUNE is/was employed by Defendant, BEHAVIORAL HEALTH, as a Behavioral Health Tech ("BHT"), but was performing the job functions of Client Care Specialist also known as Case Manager at the Defendant's Palm Beach, Florida location.

63. Plaintiff JEUNE, on several occasions, asked Defendant's upper management for the pay increase that she was promised when first hired and she would also base her request for increased pay due to the differential work she was doing as a Client Care Specialist (Case Manager) not as Behavior Tech, which was the position at which she was originally hired. Defendant's management refused to give Plaintiff the pay increase that was due and owed to her, and instead Defendant fired Plaintiff on February 19, 2018, under the pretext of her having engaged in inappropriate verbal exchanges with Defendant's managers and directors. Furthermore, the Defendant has a specific policy that dealt such issues, but these these policies were not followed. Plaintiff never received any written or verbal counseling for Plaintiff's behavior toward Defendant's managers and directors.

55. Plaintiff, JEUNE, complained of discrimination to Defendant's management about the use of the word "OTAY" by the Clinical Director and Management did nothing about it. Said complaint was made by Plaintiff, on numerous times about race and national origin discrimination that she and other Haitian and Black co-workers continually experienced and that were being ignored by the Defendant, BEHAVIORAL HEALTH.

56. Following the Plaintiff JEUNE's complaints to management, Defendant retaliated against Plaintiff by terminating her employment on February 19, 2018 and also terminating

Plaintiff's immediate supervisor, Mr. Robertino Jones, who is also Black, within fifteen (15) minutes a part of Defendant's having terminated Plaintiff JEUNE's employment. Plaintiff JEUNE's immediate supervisor was terminated from his employment because he had been her advocate before Defendant's upper management and Defendant's owner.

57. As a direct and proximate result of the Defendant's conduct, Plaintiff, STEPHANIE JEUNE, suffered the following injuries and damages:

   a. Plaintiff's employment was terminated with Defendant;

   b. In addition, Plaintiff has incurred expenses in seeking other employment;

   c. Plaintiff suffered mental anguish and emotional distress.

**WHEREFORE,** Plaintiff, STEPHANIE JEUNE, prays that this Court:

   a. Advance this case on the docket;

   b. Assign this case for hearing at the earliest practicable date and cause this case to be in every way expedited pursuant to 42 U.S.C. § 2000e-5(f)(5);

   c. Issue a declaratory judgment that Defendant's practices toward Plaintiff violated his rights under Title VII;

   d. Enjoin Defendant, its administrators, directors and supervisors from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their national origin, which rights are secured by Title VII;

   e. Order Defendant to remedy the National Origin discrimination against Plaintiff by:

      1. Paying appropriate back pay;

      2. Paying prejudgment interest; and

      3. Providing any other relief that this Court deems appropriate.

   f. Enter a judgment against Defendant for compensatory damages;

  g. Enter a judgment against Defendant for punitive damages; and

  h. Enter a judgment against Defendant for costs and a reasonable award of attorneys' fees pursuant to Title VII.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury as to all counts and issues so triable by a jury as a matter of right.

Respectfully submitted on this __1st__ day of __October__, 2019.

**LAW OFFICES OF JAMES JEAN-FRANCOIS, P.A.**
Duty Free Americas, Suite 211
6100 Hollywood Boulevard
Hollywood, FL 33024
Phone: (954) 987-8832
Fax: (954) 987-2622
E-mail address: Primary: *jamesjeanfrancoisesq@hotmail.com*
       Secondary: *jjonlaw@hotmail.com*

By: */s/ James Jean-Francois*
   **JAMES JEAN-FRANCOIS, ESQ.**
   Fla. Bar # 0495115
   Attorney for Plaintiffs